MAIN, Judge.
 

 Lugine Capri Caver was convicted of third-degree burglary, a violation of § 13A-7-7, Ala.Code 1975. Pursuant to Alabama’s Habitual Felony Offender Act, the trial court sentenced him to 20 years’ imprisonment.
 
 See
 
 § 13A-5-9 et seq., Ala.Code 1975. This appeal followed.
 

 On June 12, 2008, at 3:15 a.m., an individual broke the drive-through window at the McDonald’s fast-food restaurant located on St. Stephens Road in Mobile County and removed the cash-register drawer. A surveillance camera recorded the incident. The cash-register drawer that was taken from the cash register reportedly did not contain any money. However, it was not located. Law-enforcement officials attempted to recover fingerprints from the broken glass. However, they were unable to obtain any fingerprints because the glass was in such small pieces.
 

 Sean Black, a detective with the City of Mobile Police Department, testified that he was in charge of the investigation of this burglary. He received the surveillance videotape on June 26, 2008, from Lance Williams, the owner and operator of the McDonald’s restaurant, and he viewed the tape that same day. He recognized
 
 *572
 
 the person in the videotape as Caver because he had seen him several times in photographs and in person. Detective Black testified, over objection, that he had seen Caver on the day of the burglary because Caver had been brought to the police station on other charges. Caver did not testify, and the defense presented no evidence.
 

 On appeal, Caver argues that the trial court reversibly erred by reopening the case and allowing the jury to view his arms after the jury had begun its deliberations. Specifically, he asserts that: “in allowing additional physical evidence against Caver to be admitted into evidence, after the jury had begun its deliberations, denied him a fair trial and is therefore reversible error.” (Appellant’s brief, at 9.)
 
 [1]
 

 “Due process guarantees that a criminal defendant will be treated with ‘that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.’
 
 Lisenba v. California,
 
 314 U.S. 219, 236 (1941).”
 

 United States v. Valenzuela-Bernal,
 
 458 U.S. 858, 872 (1982). In state criminal prosecutions, due process “secures the accused in those certain basic and fundamental rights which are an integral part of the American system of criminal jurisprudence.”
 
 Application of Stecker,
 
 271 F.Supp. 406, 409 (D.N.J.1966), aff'd, 381 F.2d 379 (3d Cir.), cert. denied, 389 U.S. 929 (1967). “[W]hen a case is reopened for the reception of further evidence, it must be done in such a manner that the rights of all parties will be protected and ample opportunity afforded them for cross examination or rebuttal, and even for requesting additional instructions, if the matters introduced should reasonably require them.”
 
 Perkins v. State,
 
 253 Miss. 652, 655, 178 So.2d 694, 696 (1965) (holding that it was reversible error for the trial court to allow the jury to view the victim’s scars once deliberations had begun).
 

 The record reveals that, while the jury was deliberating, it returned to the courtroom several times to view the surveillance videotape of the burglary. After viewing the surveillance tape for a third time, the jury returned to the jury room to deliberate and then presented the following question to the circuit court judge: “Can we see his arms?” (C. 24; R. 137.) The following exchange transpired:
 

 “THE COURT: Over the objection of the defendant, I’m going to allow the jury to view the defendant’s arms. They’ve asked a question of can they see his arms, after watching the videotape numerous times.
 

 “[DEFENSE COUNSEL]: Judge, here’s another thing I’m going to say. That it really bothers me. I can’t argue to the jury now. I can’t make any argument at all to the jury concerning what they see on his arms; where, if it had happened during the trial, I could have, and I would have. He’s got tattoos on him that should be able to be seen in that video that now I can’t argue to the jury: Look, folks, look at this right here. Do you see this? You could have seen this on the video.
 

 “THE COURT: All right. Well-
 

 
 *573
 
 “[DEFENSE COUNSEL]: Then it gets into a situation where he wants to — he wants to cross-examine him or he wants to argue about it.
 

 “[PROSECUTOR]: We don’t know why they want to see it, though. We don’t know why they want to see his arms.
 

 “THE COURT: Let’s go ahead.
 

 “[DEFENSE COUNSEL]: Where do you want to put him. Judge?
 

 “THE COURT: What do you think? Just right where you’re at [sic] ?
 

 “[DEFENSE COUNSEL]: Yeah, I think right here.
 

 “THE COURT: Go ahead and bring them on out. We’ll let them—
 

 “(The jury enters the courtroom at 3:45 p.m.)
 

 “THE COURT: All right. The question was asked whether you could see his arms, and I’m going to allow that in this case. If you would, Mr. Caver, go ahead and put your arms out so the jury members can see it.
 

 “[DEFENSE COUNSEL]: Make sure they see the top of your hands?
 

 “THE COURT: No comments by anybody on anything of this. Just let them see it, and we’ll send /all back in when /all are ready. Are /all ready? See what you need to see?
 

 “(Jurors respond affirmatively.)
 

 “THE COURT: All right. Go ahead and go back in.”
 

 (R. 137-38.) The record indicates that approximately 13 minutes later the jury announced it had reached a verdict; the jury found Caver guilty as charged in the indictment.
 

 We turn to Caver’s claim that because no evidence was presented at trial on the issue whether he had markings on his arms, the view given to the jury of his arms constituted new evidence and amounted to an improper reopening of the case. Section 15-14-4, Code of Alabama 1975, gives a trial court permission to allow the introduction of additional evidence “at any time
 
 before the conclusion of argument....”
 
 §15-14-4, Ala.Code 1975 (emphasis added). Further,
 
 “[bjefore the jury retires to begin deliberation of the case,
 
 the court, upon a showing of good cause, may allow the case to be reopened.” Rule 19.1(h), Ala.R.Crim.P. (emphasis added).
 
 See
 
 Charles W. Gamble,
 
 McElroy’s Alabama Evidence
 
 § 436.01(2) (5th ed. 1996). “Although it is within the discretion of the trial court to reopen the case after the close of evidence, it is clear that cases construing § 15-14-4 have consistently held it to be error to do so after submission of the case to the jury.”
 
 Harris v. State,
 
 371 So.2d 979, 983 (Ala.Crim. App.), cert. denied, 371 So.2d 984 (Ala.1979), and cases cited therein.
 
 See also Reed v. State,
 
 475 So.2d 641 (Ala.Crim.App.1985) (holding that the trial court improperly allowed the jury to have three additional pages of a report after only one page of the report had been referred to during the trial).
 
 Cf. Jolly v. State,
 
 405 So.2d 76 (Ala.Crim.App.1981) (finding no error where the trial judge allowed in a photographic negatives, which the jury requested to see after it had begun its deliberations, which depicted a tag appearing on the automobile used by the robbers because, during the course of the trial, there had been oral testimony about the negatives).
 

 In
 
 Ex parte Batteaste,
 
 449 So.2d 798 (Ala.1984), the Supreme Court of Alabama held that it was error for the trial court to permit “the jury, over objection of the defendant, to view the defendant’s face to see if he had a scar on it.” 449 So.2d at 799. In
 
 Harnage v. State,
 
 290 Ala. 142, 274 So.2d 352 (1972), this Court ruled that a jury request to view the hands of a
 
 *574
 
 defendant who was charged with murder by strangulation came too late because the case had already been submitted to the jury and any member of the jury had the opportunity to observe the defendant’s hands during the trial, particularly while the defendant was testifying in his own behalf. 290 Ala. at 144, 274 So.2d at 354.
 
 Accord United States v. Santana,
 
 175 F.3d 57 (1st Cir.1999) (holding that the district court improperly allowed the jury, during its deliberations, to return to the courtroom to observe the defendant’s ears, which had been covered during the trial by headphones used for language translation);
 
 Scott v. State,
 
 664 So.2d 3, 4 (Fla.Dist.Ct.App.1995) (finding error in a prosecution for an undercover drug transaction, where the jury requested, after the close of evidence and during its deliberations, “to view the defendant’s right profile,” which had not been viewed at trial).
 

 The trial court erred in requiring Caver to display his arms to the jurors after the jury had retired for deliberations. The display of his arms constitutes non-testimonial physical evidence the jury had not seen during the trial, and the presentation of this new evidence after the court submitted the case to the jury was improper. See
 
 Batteaste, supra; Harris, supra; Hamage, supra.
 
 Because the sole issue at trial was whether Caver was the person depicted in the surveillance videotape of the burglary of the McDonald’s restaurant and the jury requested additional information in resolving that issue, we hold that the error was not harmless. For these reasons, we reverse the judgment. The judgment is reversed and the case remanded for a new trial.
 

 REVERSED AND REMANDED.
 

 WELCH and WINDOM, JJ., concur. KELLUM, J., concurs in the result. WISE, P.J., recuses herself.
 

 [1]
 

 . The State submits that Caver failed to preserve this issue for review. However, we believe that, although Caver's objection was not a model of clarity, it is clear that the trial court understood his objections, and that his arguments on appeal are challenging the trial court's ruling on the same or similar grounds.