BURKE, Judge.
Geranda Marcine Harris was convicted of third-degree burglary, a violation of § 13A-7-7, Ala.Code 1975, and was sentenced to 10 years’ imprisonment; that sentence was split and Harris was ordered to serve three years’ incarceration followed by three years’ probation. Harris was also ordered to pay restitution in the amount of $889.63. This appeal followed.
The evidence at trial revealed that,, at approximately 1:00 a.m. on May 28, 2013, an individual broke into a liquor store and stole 12 bottles of liquor. Testimony revealed that the person gained entry into the store by breaking out the glass on the front door. Video-surveiUance'footage was shown to the jury as well as still photographs taken from the video.
Harris’s main argument- at trial was that the individual depicted in the video was not him. During opening statements, defense counsel asked Harris to stand up and remove his coat so that the jury could look at *256 him. (R. 57.) Defense counsel asked the jury to pay attention to Harris’s physique and to compare it with the physique of the individual in the video. During Harris’s closing argument, defense counsel again referred to Harris and stated:
“[Yjou’ve seen the video. My client is a larger man than the individual who broke into the ABC [liquor] Store that morning in the shoulders, in the waist.
“I had him stand up and remove his jacket so that the jacket didn’t appear to make him larger than he actually is. We’re not trying to hide anything.
“Wall had an opportunity to view him. You’ve had an opportunity to see him, perhaps in the hallway walking around, to get a good look. He’s a larger man than the individual that is in this video.
“Additionally, when you look at the face of the individual who is in the video and in the still shots, this man right here appears much, much older in the face than my client does, even today, more than two years after this alleged incident took place.”
(R. 115-16.)
After the jury began deliberations, it sent a note to the judge asking: “Can we take a closer look at the defendant and/or use picture, hold it up in hand while doing so?” (R. 142.) Over Harris’s objection, the trial court allowed the jury to return to the courtroom and instructed Harris to stand in front of them for “a number of seconds.” (R. 144.)
On appeal, Harris argues that the trial court’s acquiescence to the jury’s request was equivalent to reopening the case after it had been submitted to the jury. Harris cites several cases in which Alabama courts have found similar actions to constitute reversible error.
In Caver v. State, 52 So.3d 570, 573 (Ala.Crim.App.2010), this Court noted:
“Section 15-14-4, Code of Alabama 1975, gives a trial court permission to allow the introduction of additional evidence ‘at any time before the conclusion of argument. ... ’ § 15-14-4, Ala.Code 1975 (emphasis added). Further, ‘[b]e-fore the jury retires to begin deliberation of the case, the court, upon a showing of good cause, may allow the case to be reopened.’ Rule 19.1(h), Ala. R.Crim. P. (emphasis added). See Charles W. Gamble, McEIroy’s Alabama Evidence § 436.01(2)(5th ed.1996). ‘Although it is within the discretion of the trial court to reopen the case after the close of evidence, it is clear that cases construing § 15-14-4 have consistently held it to be error to do so after submission of the case to the jury.’ Harris v. State, 371 So.2d 979, 983 (Ala.Crim.App.), cert. denied, 371 So.2d 984 (Ala.1979), and cases cited therein. See also Reed v. State, 475 So.2d 641 (Ala.Crim.App.l985)(hold-ing that the trial court improperly allowed the jury to have three additional pages of a report after only one page of the report had been referred to during the trial). Cf. Jolly v. State, 405 So.2d 76 (Ala.Crim.App.1981)(finding no error where the trial judge allowed in a photographic negatives, which the jury requested to see after it had begun its deliberations, which depicted a tag appearing on the automobile used by the robbers because, during the course of the trial, there had been oral testimony about the negatives).”
In Caver, the jury, after it began deliberations, asked to see the defendant’s arms, which had not been visible during trial. In reversing Caver’s conviction, this Court held that “[t]he display of [Caver’s] arms constitutes non-testimonial physical evidence the jury had not seen during the trial, and the presentation of this new evidence after the court submitted the case to the jury was improper.” Id. at 574. See also Ex parte Batteaste, 449 So.2d 798 (Ala.1984)(holding that it was reversible
*257 error to allow the jury, after it had begun deliberating, to view the defendant’s face to see if it had a scar on it).
The State argues that Harris’s case is distinguishable from cases like Caver and Batteaste, because, it says, the jury was not given any information it did not already have when it was allowed to look at Harris during deliberations. The State points to the fact that defense counsel had Harris stand up and remove his jacket during opening statements as well as to counsel’s continued references to Harris’s appearance during closing arguments. According to the State, this put Harris’s physical appearance at issue. Therefore, the State argues, the circumstances of Harris’s case are more similar to cases in which trial courts have allowed a jury to review evidence that was already before it.
That was the position taken in Washington v. United States, 881 A.2d 575, 582 (D.C.2005), in which the Court of Appeals held that a jury’s request to view the defendant up close did not constitute “ ‘new evidence’ ” in violation of the general principle “that a jury should not view physical evidence of the defendant during its deliberations which it did not observe at trial.” In Batteaste v. State, 449 So.2d 797 (Ala.Crim.App.1983), this Court reached a similar conclusion. In Batteaste, the trial court allowed the jury, after the jury had retired to deliberate, to look at the defendant’s face to see if it had a scar on it. This Court held:
“[T]he trial court’s acquiescence to the jury’s request did not amount to a reopening of the evidence in the case. The appellant was present throughout the trial. It is impossible to suppose that during that time his face was never visible to any members of the jury. The opportunity given to the members of the jury to see the appellant’s face again did not convey any information to them that was not available during trial. Jolly v. State, 405 So.2d 76 (Ala.Crim.App.1981); Merriweather v. State, 364 So.2d
374 (Ala.Cr.App.) cert, denied, Ex parte .Merriweather, 364 So.2d 377 (Ala.1978).”
Batteaste v. State, 449 So.2d at 798.
However, this Court’s judgment in Batteaste v. State was subsequently reversed by the Alabama Supreme Court in Ex parte Batteaste, 449 So.2d at 799 (Ala. 1984), which held:
“The Court of Criminal Appeals, while acknowledging that it is error to reopen a case and allow presentation of evidence after a case has been submitted to the jury, nevertheless found that granting the jury’s request to view the appellant’s scar did not amount to a reopening of the evidence because the appellant had beén present throughout the trial and thus the court’s action did not convey any information to the jurors not available during the trial. See Jolly v. State, 405 So.2d 76 (Ala.Cr.App.1981).
. “We disagree with the court’s rationale, because where, as here, the evidence relates to the person of the accused, the principle of law ‘in Harnage v. State, 290 Ala. 142, 274 So.2d 352 (1972), is controlling. In Harnage, the Court ruled that a jury request to view the hands of the defendant, who was charged with murder by strangulation, came too late because the case had already been presented to the jury and any member of the jury had had the opportunity to observe the defendant’s hands during the trial, particularly’while' the defendant was testifying in his own behalf. 290 Ala. at 144, 274 So.2d at 354.”
In Jolly v. State, 405 So.2d 76 (Ala.Crim. App.1981), which was cited in Batteaste v. State and' Ex parte Batteaste, the jury, during its deliberations, requested to see a photograph that had not been admitted into evidence. This Court held that, al *258 though it was technically an error for the trial court to allow the jury to see the photograph, “technical errors, not affecting the substantial rights of the defendant, must be disregarded and cannot form the basis pn which to reverse a conviction.” 405 So.2d at 77. We noted that, the photograph “conveyed no information that had not been emphatically conveyed to the jury during the trial.” Id. See also Merriweather v. State, 364 So.2d 374 (Ala.Crim.App.1978)(holding that a drawing that- was mistakenly allowed to go to the jury “conveyed no information to the jury while in'the jury room that had not been emphatically conveyed to the jury during the trial of the case”).
Although the State is correct in its assertion that the jury’s, final examination of Harris gave it no more information than it already had, Ex parte Batteaste stands for the proposition that the rule discussed in Jolly and Merriweather, i.e., that it is not reversible error to allow evidence that has not been admitted to go to the jury if that evidence provides- no new information, is different when that evidence relates to the person of the defendant. Accordingly, the trial court erred by overruling Harris’s objection to the jury’s request to look at him after it had begun deliberations.
..Moreover, we cannot say that this error was harmless. There were no eyewitnesses to. the burglary, nor did police discover any fruits of the crime in Harris’s possession. Additionally, there was no physical evidence linking Harris to the crime. The State’s entire case centered on whether the jury believed that the individual depicted in the surveillance footage was Harris.
For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded with instructions that Harris be.granted a. new trial.
REVERSED AND REMANDED...
WINDOM, P.J., and WELCH and JOINER, JJ., concur.
KELLUM, J., concurs in the result.