MAIN, Justice.
Geranda Marcine Harris was convicted of third-degree burglary, a violation of § 13A-7-7, Ala. Code 1975, and was sentenced to 10 years’ imprisonment; that sentence was split and Harris was ordered to serve 3 years’ incarceration followed by 3 years’ probation. Harris was also ordered to pay restitution in the amount of $889.63. Harris appealed his conviction to the Court of Criminal Appeals. The Court of Criminal Appeals reversed the judgment of the Mobile Circuit Court and remanded the case with instructions that Harris be granted a new trial. See Harris v. State, 235 So.3d 255 (Ala. Crim. App. 2016). The State petitioned for certiorari review, which this Court granted; we now reverse and remand.
Facts and Procedural History
The Court of Criminal Appeals stated the relevant facts, as follows:
“The evidence at trial revealed that, at approximately 1:00 a.m. on May. 28, 2013, an individual broke into a liquor store and stole 12 bottles of liquor. Testimony revealed that the person gained entry into the store by breaking out the glass on the front door. Video-surveillance footage was shown to the jury as well as still photographs taken from the video.
“Harris’s main'argument at trial was that the individual depicted in the video was not him. During opening- statements, defense counsel asked Harris to stand up and remove his coat so that the jury could look at him. ... Defense counsel asked the jury to pay attention to Harris’s physique and. to compare it with the physique of the individual in the video. During Harris’s closing argument, defense counsel again referred to Harris and stated:
“ ‘[Y]ou’ve seen the video. My client is a larger man than the individual who broke into the ABC [liquor] Store that morning in thé shoulders, in the waist;
“T had him stand Up and remove his jacket so that the jacket didn’t appear to make him larger than he actually is. We’re not trying to hide anything.
“ ‘Y’all hacl an opportunity to view him. You’ve had an opportunity to see him, perhaps in the hallway walking around, to get a good look. He’s a larger man than the individual that is in this video.
“ ‘Additionally, when you look at the face of the individual who is in the video and in the. still shots, this man right here appears much, much, older in the face than my client does, even today, more than two years after this alleged incident took place.’
[[Image here]]
*260 “After the jury began deliberations, it sent a note to the judge asking: ‘Can we take a closer look at the defendant and/or use picture, hold it up in hand while doing so?’ ... Over Harris’s objection, the trial court allowed the jury to return to the courtroom and instructed Harris to stand in front of them for ‘a number of seconds.’ ...”
Harris, 235 So.3d at 255-56.
Harris’s specific objection at trial was as follows:
“[I]t seems to be the equivalent of almost treating my client as though he was an exhibit to be taken back in the room. He was—
“The jury was given an opportunity both during open and during the closing to—they were instructed by myself to take a good look at him for that very purpose.
“I think that it serves the court best to have them, as we instruct them, to rely upon their memory which includes not just the testimony from the stand but their physical observations of my client for the duration of the trial.
“They’ve had now several hours since we began this to look at him after having first been instructed to pay attention to things such as his hairline, his physical attributes, his facial features in comparison to what they were going to see on the video. If they failed to do so, then that is, in my opinion, at least on the jury.
“Collectively, between the 12 of them, they can discuss what they recall of his facial features and body physique and amongst themselves and them collective memory can make a decision, in my opinion, without having seen him for any additional amount of time.”
Discussion
On appeal, Harris argued that the trial court’s acquiescence to the jury’s request was equivalent to reopening the case after it had been submitted to the jury. In reversing the trial court’s judgment, the Court of Criminal Appeals stated:
“In Caver v. State, 52 So.3d 570, 573 (Ala. Crim. App. 2010), this Court noted:
“ ‘Section 15-14-4, Code of Alabama 1975, gives a trial court permission to allow the introduction of additional evidence “at any time before the conclusion of argument ,... ” § 15-14-4, Ala. Code 1975 (emphasis added). Further, “[bjefore the jury retires to begin deliberation of the case, the court, upon a showing of good cause, may allow the case to be reopened.” Rule 19.1(h), Ala. R. Crim. P. (emphasis added). See Charles W. Gamble, McElroy’s Alabama Evidence § 436.01(2)(5th ed. 1996). “Although it is within the discretion of the trial court to reopen the case after the close of evidence, it is clear that cases construing § 15-14-4 have consistently held it to be error to do so after submission of the case to the jury.” Harris v. State, 371 So.2d 979, 983 (Ala. Crim. App.), cert. denied, 371 So.2d 984 (Ala. 1979), and cases cited therein. See also Reed v. State, 475 So.2d 641 (Ala. Crim. App. 1985)(hold-ing that the trial court improperly allowed the jury to have three additional pages of a report after only one page of the report had been referred to during the trial). Cf. Jolly v. State, 405 So.2d 76 (Ala. Crim. App. 1981)(fínding no error where the trial judge allowed in ... photographic negatives, which the jury requested to see after it had begun its deliberations, which depicted a tag appearing on the automobile used by the robbers because, during the course of the trial, there had been oral testimony about the negatives).’
*261 “In Caver, the jury, after it began deliberations, asked- to see the defendant’s arms, which had not been visible during trial. In reversing Caver’s conviction, this Court held that ‘[t]he display of [Caver’s] arms constitutes non-testimonial physical evidence the jury had not seen during the trial, and the presentation of this new evidence after the court submitted the case to the jury was improper.’ Id. at 574. See also Ex parte Batteaste, 449 So.2d 798 (Ala. 1984)(holding that it was reversible error to allow the jury, after it had begun deliberating, 'to view the defendant’s face to see if it had a scar on it).
“The State argues that Harris’s case is distinguishable from cases like Caver and Batteaste, because, it says, the jury was not given any information it did not already have when it was allowed to look at Harris during deliberations. The State points to the fact that defense counsel had Harris stand up and remove his jacket during opening statements as well as to counsel’s continued references to Harris’s appearance during closing arguments. According to the State, this put Harris’s physical appearance at issue. Therefore, the State argues, the circumstances of Harris’s case are more similar to cases in which trial courts have allowed a jury to review evidence that was already before it.
“That was the position taken in Washington v. United States, 881 A.2d 575, 582 (D.C. 2005), in which the Court of Appeals held that a jury’s request to view the defendant up close did not constitute ‘ “new evidence” ’’ in violation of the general principle ‘that a jury should not view physical evidence of the defendant' during its deliberations which it did not observe at trial.’ In Batteaste v. State, 449 So.2d 797 (Ala. Crim. App. 1983), this Court reached a similar conclusion. In Bat-teaste, the trial court allowed the jury, after the jury had retired to deliberate, to look at the defendant’s face to see if it had a scar on it. This Court held:
“‘[T]he trial court’s acquiescence to the jury’s request did not amount to a reopening of the evidence in the ease. The appellant was present throughout the trial. It is impossible to suppose that during that time his face was never visible to any members of the jury. The opportunity given to the members of the jury to see the appellant’s face again did not convey any information to them that was not available during trial. Jolly v. State, 405 So.2d 76 (Ala. Crim. App. 1981); Merriweather v. State, 364 So.2d 374 (Ala. Cr. App.) cert. denied, Ex parte Merriweather, 364 So.2d 377 (Ala. 1978).’
“Batteaste v. State, 449 So.2d at 798.
“However, this Court’s judgment in Batteaste v. State was subsequently re-' versed by the -Alabama Supreme Court in Ex parte Batteaste, 449 So.2d at 799 (Ala. 1984), which held:
“‘The Court of Criminal Appeals, while acknowledging that it is error to reopen a case and allow presentation of evidence after a case has been submitted to the jury, nevertheless found that granting- the jury’s request to view the appellant’s scar did not amount to a reopening of the evidence .because the appellant had been present throughout the trial and thus the court’s action did not convey any information to the jurors not available during the trial. See Jolly v. State, 405 So.2d 76 (Ala. Cr. App.1981).
“ ‘We disagree with the court’s rationale, because where, as here, the evidence relates to the person of the accused, the principle of law in Harnage v. State, 290 Ala. 142, 274 So.2d 352 (1972), is controlling. In Harnage, the Court ruled that a jury request to view the hands of the defendant, who *262 was charged with murder by strangulation, came too late because the case •had already been presented to the jury and any member of the jury had had the opportunity to observe the defendant’s hands during . the trial, particularly while the defendant was testifying in his own b'ehalf. 290 Ala. at 144, 274 So.2d at 354.
“In Jolly v. State, 405 So.2d 76 (Ala. Crim. App. 1981), which was cited in Batteaste v. State and Ex parte Bat-teaste, the jury, during its deliberations, requested to see a photograph that had not been admitted into - evidence. This Court held that, although it was technically an error for the trial court to allow the jury to see the photograph, ‘technical errors, not affecting the substantial rights of the defendant, must be disregarded and cannot form the basis ■ on which to reverse a conviction.’ 405 So.2d at 77. We noted that the photograph ‘conveyed no information- that had not been emphatically conveyed to the jury during the trial.’ Id. See also Merriweather v. State, 364 So.2d 374 (Ala. Crim. App. 1978)(holding that a drawing that was mistakenly allowed to go to the jury ‘conveyed no information to the jury while in the jury room that had not been emphatically conveyed to the jury during the trial-of the case’)..
“Although the State is correct in its assertion that the jury’s final examination of Harris gave it no. more information than it already had, Ex parte Bat-teaste stands.for the proposition that the rule discussed in Jolly and Merriweather, i.e., that it is not reversible error to allow evidence that has not been admitted to go to the jury if that evidence provides no new information, is-different when that evidence, relates to the person of the defendant. Accordingly, the trial court erred by overruling Harris’s objection to the jury’s request to look at him ..after it had begun deliberations.
“Moreover, we cannot say that this error was harmless. There were no eyewitnesses to the burglary, nor did police discover any fruits of the crime in Harris’s possession. Additionally, there was no physical evidence linking Harris to the crime. The State’s entire case centered on whether the jury believed- that the individual depicted in the surveillance footage was Harris.” '
Harris, 235 So.3d at 256-58.
Before this Court, the State contends that the facts in the present case are distinguishable from the facts in Ex parte Batteaste, 449 So.2d 798 (Ala. 1984), and that the Court of Criminal Appeals’ application of Ex parte Batteaste to the present case was erroneous. In the alternative, the State contends that this Court should overrule-Exjgarte_Batteaste “to the extent that it equates the defendant’s physical appearance at trial with testimonial evidence subject to the prohibition against compelled self-incrimination.” State’s brief, at 13..
We agree with the State that the situation in the present ease is materially different than the situation in Ex parte Batteaste and the situation in Harnage v. State, 290 Ala. 142, 274 So.2d 352 (1972), the case upon which Ex parte Batteaste relied. As the Court of Criminal Appeals correctly noted, it is well established that it is érror to reopen a case and allow the presentation of new evidence after the case has been submitted to the jury. Caver v. State, 52 So.3d 570, 573-74 (Ala. Crim. App. 2010). ⅜ The rationale behind this rule appears to be that the parties would not have any opportunity “ ‘for cross examination or rebuttal’ ” or “ ‘for requesting additional instructions’” concerning this new evidence. Caver, 52 So.3d at 572 (quoting Perkins v. State, 253 Miss. 652, 655, 178 So.2d 694, 696 (1965)). Also, it has been held that it is not reversible error, to allow evidence that has not been presented to *263 the jury to go -to the jury if that evidence provides no new information. As the Court of Criminal Appeals noted) -this latter- rule is the rule discussed in Jolly v. State, 405 So.2d 76 (Ala. Crim. App. 1981), and Merriweather v. State, 364 So.2d 374 (Ala. Crim. App. 1978), and referenced in Ex parte Batteaste. According to the Court of Criminal Appeals, this rule concerning evidence that has not been presented to the jury but that provides no new information “is different when that evidence relates to the person of the defendant.” Harris, 235 So.3d at 258 (citing Ex parte Batteaste). However, this rule has no application if the specific evidence has been presented to the jury, which is the case in the present situation.
In Ex parte Batteaste, the defendant was present at trial, but his appearance was never specifically presented to the jury. More specifically, the jury was never asked to observe whether the defendant had a scar on one side of his face. Thus, this Court held that the trial court erred when, after the jury had retired, the court permitted the jury to view the defendant’s face to see whether it had a scar on it. Ex parte Batteaste, 449 So.2d at 799; Batteaste v. State, 449 So.2d 797 (Ala. Crim. App. 1983).
Similarly, in Harnage, this Court stated that a juror’s request to see the hands of the defendant, who was charged with murder by strangulation, came too late when the case had already been submitted to the jury. The jurors had the opportunity to observe the defendant’s hands during the trial and while the defendant was testifying in his own behalf. However, like the situation in Ex parte Batteaste, the defendant’s appearance was never specifically presented to the jury, and, more particularly, the jury was iiever specifically asked to examine the defendant’s hands. Harnage, 290 Ala. at 144, 274 So.2d at 354.
Likewise, in Caver, the trial court required thé defendant to display his arms to the jurors after the jury had retired for deliberations. The Court of Criminal Appeals held that “(t]he display of his arms constitutes non-testimonial ■ physical evidence the jury had not seen during the trial, and the presentation of this new evidence after the court submitted the case to the jury was improper.” Caver, 52 So.3d at 574 (emphasis added).
In the present case, we are not presented with a situation, like those in Ex parte Batteaste, Harnage, and Caver, where the case was submitted to the jury without the defendant’s appearance ever being specifically presented to the jury. Instead, on more than one occasion before the jury retired, Harris’s counsel specifically asked the jury to observe Harris’s appearance. Thus, this evidence was specifically presented to the jury and was not new. evidence, and the parties had the opportunity to address this evidence before the case was submitted to the jury. Accordingly, the Court of Criminal Appeals’ application of Ex parte Batteaste—a case in which the specific evidence in question had not been presented to the jury before it retired—is misplaced. In the present case, the trial court did not reopen the case and allow the presentation of new evidence after the case had been submitted to the jury; thus, the trial court did not err. Accordingly, we reverse the Court of Criminal Appeals’ decision.[1]
*264 Conclusion
Based on the foregoing, we reverse the judgment of the Court of Criminal Appeals and remand the case to that court for proceedings consistent with this opinion.
REVERSED AND REMANDED.*
Stuart, Bolin, Parker, Murdock, Shaw, Wise, and Bryan, JJ., concur.

. Because we hold that Ex parte Batteaste is distinguishable from the present case, we need not entertain the State’s request to overrule Ex parte Batteaste "to the extent that it equates the defendant's physical appearance at trial with testimonial evidence subject to the prohibition against compelled self-incrimination.” We note that it is not clear that Ex parte Batteaste even stands for such a proposition or that the Court of Criminal Appeals’ holding was based on the prohibition against compelled self-incrimination. In any event, it *264 is not necessary to make such a decision in the present case.

 Note from the reporter of decisions: On April 21, 2017, on remand from the Supreme Court, the Court of Criminal Appeals affirmed, without opinion (CR-14-1461).